Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1286 | **DATE** | 8/4/2000 |
| **CASE TITLE** | Aftra Health vs. Biondi | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. For the reasons set forth on the attached order, the Court grants third party defendant's motion for summary judgment.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 0 9 2000 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 47 |
| | Copy to judge/magistrate judge. | ED-7 FILED FOR DOCKETING | | |
| OR | courtroom deputy's initials | 00 AUG -7 PM 3:43 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRUSTEES OF THE AFTRA HEALTH FUND, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 99 C 1286<br>) |
| RICHARD BIONDI and HAZEL BIONDI, | )<br>) |
| Defendants. | )<br>) |
| RICHARD BIONDI, | )<br>) |
| Third Party Plaintiff, | )<br>) |
| vs. | )<br>) |
| THOMAS C. O'BRIEN, SELMA D'SOUZA, O'BRIEN & BARBAHEN, and GAGLIARDI, NELSON & O'BRIEN, | )<br>)<br>)<br>) |
| Third Party Defendant. | ) |

DOCKETED AUG 09 2000

## MEMORANDUM OPINION & ORDER

MATTHEW F. KENNELLY, District Court:

The Trustees of the AFTRA Health Fund brought this action against Richard and Hazel Biondi seeking restitution for medical benefits paid by the Fund on Hazel's behalf. When Richard and Hazel were divorced, Richard entered into a marital settlement agreement in which he agreed to maintain Hazel's medical benefits pursuant to COBRA for 24 months. Biondi made sure that Hazel had medical coverage, but he did not do this by paying for COBRA coverage. Rather, he kept Hazel on the Fund's medical coverage by not telling the Fund, as he was

47

obligated to do, that he and Hazel were no longer married. As a result, Hazel, who was no longer eligible for medical benefits through the Fund, remained covered; indeed, Biondi kept her on the Fund's medical plan not for 24 months, but for approximately 57 months. During that period, the Fund paid medical expenses of over $100,000 on Hazel's behalf. Biondi eventually reported to the Fund that he and Hazel had gotten a divorce, and following that disclosure, the Fund brought this lawsuit.

On April 13, 2000, following a bench trial, the Court ruled in favor of the Fund and against Biondi on the Fund's common law fraud claim. The Court concluded that the Fund had proved by clear and convincing evidence that Biondi had a duty to disclose to the Fund that Hazel was no longer his wife; that he failed to do so knowingly and with the intent that the Fund rely on the omission, continue to believe that Hazel was his wife, and provide her with medical coverage; and that the Fund relied on the omission and was damaged as a result of this. *See* Apr. 13, 2000 Tr. at 13. The Court also found that Biondi had made at least one affirmative misrepresentation to the Fund that Hazel was his wife. *Id.* at 8. Based on the Court's conclusions, the parties thereafter reported to the Court that the amount payable by Biondi to the Fund is $118,006.70.

Biondi has filed a third party claim against the attorneys who represented him in connection with the divorce. He contends that they committed malpractice by, among other things, failing to tell him what he needed to do to obtain COBRA coverage for Hazel and by failing to tell him that he had to advise the Fund that he and Hazel were no longer married. Biondi relies in part on a series of findings that the Court made in its April 13, 2000 findings and conclusions. The Court found that Biondi did not understand the marital settlement agreement's

2

reference to COBRA and that his counsel had not explained the reference to him, and that if Biondi had understood he would have obtained COBRA coverage.[1] The Court also found that what Biondi understood was that he had to carry Hazel on his medical coverage and that he interpreted this as meaning that he was to keep her on his existing coverage as if she were still his spouse. In his testimony, however, Biondi conceded that he had never asked his counsel to explain the settlement agreement's provision and that counsel had never told him that he was to continue to treat Hazel as his spouse. Apr. 13, 2000 Tr. at 3-4, 6.

The third party defendants have moved for summary judgment, arguing that a person found liable for fraud cannot seek to shift liability to counsel on a malpractice theory. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether there are genuine issues of material fact for trial, the Court is required to consider all evidence and draw all reasonable inferences in favor of Biondi, the non-moving party. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Even if Biondi's lawyers were negligent and committed malpractice as he contends, Biondi cannot seek to hold them responsible for the damages he has to pay as a result of his fraud. What the case boils down to is this: Biondi's lawyers did not explain to him that there was a legitimate way for him to provide Hazel medical benefits, so he chose to commit fraud because he did not realize that there was a proper alternative. Biondi cites no authorities that

---

[1] The third party defendants did not participate in the trial, and these findings accordingly are not binding on them.

3

hold that the client's fraud liability may be shifted to the attorney in such a case, and we are aware of none. Though third party defendants have cited no authority directly on point either, the general rule is that courts "will not aid a fraudfeasor who invokes the court's jurisdiction to relieve him of the consequences of his fraud." *E.g., Goldstein v. Lustig,* 154 Ill. App. 3d 595, 602, 507 N.E.2d 164, 170 (1987). In *Mettes v. Quinn,* 89 Ill. App. 3d 77, 411 N.E.2d 549 (1980), the plaintiff complained that her attorney's advice to enter into a settlement resulted in the discovery of a fraud independently committed by the plaintiff; she claimed that the attorney should have realized that this would happen. The court held that the plaintiff had failed to state a claim against the attorney, stating that "'[i]t has been the policy of the courts to refuse their aid to anyone who seeks to found his cause of action upon a[n] illegal or immoral act or transaction. This refusal to aid derives not from the consideration of the defendant, but from a desire to see that those who transgress the moral or criminal code shall not receive aid from the judicial branch of government.'" *Id.* at 79, 411 N.E.2d at 551. The court noted that there is "[a] long and unbroken series of precedents [that] establishes the rule that courts will not aid a fraudfeasor who invokes the court's jurisdiction to profit from his own fraud by recovering damages." *Id.*

In one sense, Biondi is not seeking to "profit" from his fraud – rather he is attempting to shift his fraud liability to a third party. But the Court believes that these same principles hold true here. While this might be a different case if the lawyers had advised Biondi to do what he did, expressly or impliedly telling him that it was not improper, Biondi makes no such claim, and indeed that is not what occurred. Biondi made the decision to commit his fraud entirely on his own, and there is no basis under the law for him to shift his liability to his attorneys, who are claimed only to have been negligent in failing to advise him of the proper alternative.

4

For these reasons, the Court grants third party defendants' motion for summary judgment.

MATTHEW F. KENNELLY
United States District Judge

Date:   August 4, 2000